IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LYNNE M. SMITH, | : |
| Plaintiff | : |
| v. | : Case No. 1:11-cv-00243-RGA |
| AUTOMATIC DATA PROCESSING, INC. and THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, | : |
| Defendants | : |

## MEMORANDUM OPINION

Gary W. Aber, Esq., Wilmington, DE.

   Attorney for Plaintiff Lynne M. Smith.

Theodore A. Kittila, Esq., ELLIOTT GREENLEAF, Wilmington, DE.

   Attorney for Defendants Automatic Data Processing, Inc. and The Prudential Insurance Company of America.

March 21, 2013

*[signature: Richard G. Andrews]*
ANDREWS, U.S. DISTRICT JUDGE:

On March 22, 2011, Plaintiff Lynne Smith filed suit against Automatic Data Processing, Inc. ("ADP") and The Prudential Insurance Company of America ("Prudential") (collectively, "Defendants") under the Employment and Retirement Income Security Act of 1974 ("ERISA") § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). (D.I.1). As an ADP employee, Ms. Smith participated in a Long Term Disability Coverage Plan ("the Plan") insured by Prudential and sponsored by ADP. (D.I.33-2). Ms. Smith claims that Defendants arbitrarily and capriciously denied long term disability ("LTD") benefits due to her under the Plan. (D.I.1 at 4). Presently before the Court is Defendants' motion for summary judgment and related briefing. (D.I.31). For reasons discussed, the motion is granted, and judgment will be entered for Defendants.

## BACKGROUND

### A. Details of the Plan

For a participant in the Plan to qualify as disabled, and thus become eligible to receive LTD benefits, Prudential must determine that the participant is "unable to perform the material and substantial duties of [the participant's] regular occupation due to [the participant's] sickness or injury; and [the participant has] a 20% or more loss in [his or her] indexed monthly earnings due to that sickness or injury." (D.1.33-2 at 28). Disabilities determined by Prudential to be "due in whole or in part to mental illness" have a limited pay period of 24 months. (*Id*. at 36).

The Plan's ERISA statement explains: "The Prudential Insurance Company of America as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits. The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious." (*Id*. at 51). The statement also explains the process for appealing benefit determinations. (*Id*. at 52-55).

1

B. Factual and Medical History

Plaintiff Lynne Smith began to work as a business analyst for a subsidiary of ADP on September 30, 2002. (D.I.34 at 6-7). On January 21, 2004, she injured her right ankle at work when she stepped off an elevator that had opened six inches above the level of the floor. (*Id.* at 14). Dr. Robert Titelman performed surgery on the ankle that day and again on February 27, 2004. (*Id.* at 2). On March 29, 2004, after his final visit with Ms. Smith, Dr. Titelman reported that the ankle could not bear weight for three to six months. (*Id.* at 3-4). He further reported that Ms. Smith's prognosis for returning to work was good and set a target date of July 31, 2004. (*Id.* at 3). On April 26, 2004, Ms. Smith began to work from home. (*Id.* at 18-19, 269). On July 1, 2004, she returned to the office on limited work duty. (*Id.* at 269).

Ms. Smith underwent several subsequent surgeries, including various procedures on her right ankle. On October 6, 2004, Dr. Jeffrey Albert performed a meniscectomy on her left knee. (*Id.* at 158). In November 2004, Dr. David Scott performed fusion surgery on her right ankle. (*Id.* at 269). After an infection developed, Dr. Scott surgically removed infected tissue from her ankle on February 4, 2005 and referred her to Dr. George Cierny. (*Id.* at 137, 270). Dr. Cierny performed both fusion and leg-lengthening surgeries on Ms. Smith's right leg. (*Id.* at 137, 143, 270). Ms. Smith underwent additional procedures in June and July of 2005 to remove pins and infected tissue from her leg. (*Id.* at 270). Dr. Scott, an orthopaedic surgeon, continued to see Ms. Smith for various ankle and leg complaints until she moved to Delaware in March 2009. (*Id.* at 126-146). Ms. Smith received LTD benefits from Prudential for the times she could not work in 2004 and 2005. (*Id.* at 23, 57). In October 2005, she began to work from home on a limited schedule, and in May 2006 she returned to work in the office on a limited schedule. (*Id.* at 271).

2

In addition to her physical problems, Ms. Smith has been in and out of counseling since 1977. (*Id.* at 330, 368).

On November 1, 2007, Ms. Smith stopped working again. (*Id.* at 486). A letter written on behalf of Ms. Smith by her psychologist, Dr. Richard Van Haveren, refers to a "major depressive episode" as the reason for her inability to work. (*Id.* at 486). Likewise, her attending physician, Dr. John Straetmans, listed "major depression recurrent severe" as the primary diagnosis for Ms. Smith's disability. Prudential approved new LTD benefits for Ms. Smith as of January 30, 2008. (*Id.* at 649).

Upon moving to Delaware in March 2009, Ms. Smith came under the care of a new set of physicians, including family practitioner Dr. Burnquist, orthopedist Dr. Orsini, and peripheral nerve surgeon Dr. Swier. (*Id.* at 517). On August 5, 2009, Dr. Swier performed nerve releases in Ms. Smith's right leg. (*Id.* at 312). He also referred Ms. Smith to pain specialist Dr. Mavrakakis. (*Id.* at 160). Effective January 30, 2010, Prudential terminated Ms. Smith's LTD benefits. (*Id.* at 595). In the letter explaining its decision, Prudential addressed both Ms. Smith's depression and her ankle injury. (*Id.*). It denied further benefits based on depression because of the 24-month payment limitation for disabilities based in whole or part on mental illness. (*Id.* at 596). It denied further benefits based on the ankle injuries because it found that, based on Ms. Smith's medical records, no physical restrictions or limitations remained after November 26, 2009. (*Id.* at 597). After two appeals in which Prudential upheld its initial decision, Ms. Smith filed suit under 29 U.S.C. § 1132(a)(1)(B). Defendants now move for summary judgment.

## DISCUSSION

A. Standards of Review

1. ERISA Standard

"A civil action may be brought-(1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Courts, guided by trust law principles, review denials of insurance benefits *de novo* unless the plan grants discretionary authority to the administrator. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989)). However, if a plan grants discretion to the administrator, courts review denials using an arbitrary and capricious standard of review. *Id*; *see also Courson v. Bert Bell NFL Player Ret. Plan*, 214 F.3d 136, 142 (3d Cir. 2000). Under this standard, a plaintiff must show that the administrator's denial was made "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Courson*, 214 F.3d at 142. An administrator's decision is supported by substantial evidence when there is sufficient evidence for a reasonable person to agree with the decision. *Id*. In addition, courts must review the decision using evidence that was available to the administrator at the time of the decision. *Johnson v. UMWA Health & Ret. Funds*, 125 F. App'x 400, 405 (3d Cir. 2005).

2. Effect of Structural Conflict of Interest

In *Firestone*, the Supreme Court identified the possibility of a structural conflict of interest in situations where the same entity makes claims decisions and pays out benefits. *See Glenn*, 554 U.S. at 112 (citing *Firestone*, 489 U.S. at 105). In *Glenn*, the Court determined that, to account for such conflicts, a court reviewing claim denials should treat the conflict as one factor in its analysis. 554 U.S. at 117. The reviewing court can give this factor more or less weight depending on the likelihood that the conflict actually affected the administrator's decision. *Id*. Thus, while the conflict of interest does not alter the standard of review, it constitutes a factor that a court must evaluate and then consider in its decision.

4

In evaluating the significance of a structural conflict of interest, courts may look to evidence found outside the record. *Howley v. Mellon*, 625 F.3d 788, 794 (3d. Cir. 2010). Consideration of this external evidence is necessary to meaningfully evaluate the importance of a structural conflict of interest because such evidence is unlikely to be offered during the claim process. *Id*. Courts must still construe this external evidence in favor of the non-moving party in a summary judgment context. *Id*. (citing *Nolan v. Heald Coll.*, 551 F.3d 1148, 1155 (9th Cir. 2009)).

B. Analysis

The Plan gives Prudential the discretionary authority to decide claims. (D.I.33-2 at 51). Therefore, this Court reviews Prudential's decision to deny Ms. Smith's benefits under the arbitrary and capricious standard of review, using only the evidence available to Prudential at the time of its decisions. *See Glenn*, 554 U.S. at 111. In support of their motion for summary judgment, Defendants argue that Prudential's decision to deny Ms. Smith's claims was reasonable because it was supported by substantial record evidence. (D.I.32 at 14-23). Specifically, Defendants claim that it was reasonable for Prudential to determine that Ms. Smith's disability is based at least in part on mental illness or, in the alternative, that it was reasonable to find that her injuries do not preclude her from performing her job. (*Id.*).

Even if, as the record suggests, Ms. Smith's most recent absence due to disability was caused in whole or part by mental illness, nothing in the Plan suggests that she cannot subsequently make a new claim based on a purely physical disability. Although she injured her ankle in 2004, the record shows that Ms. Smith had nerve releases in her right leg in August 2009 and had new complaints of pain in January 2010. (D.I.34 at 312, 280). Prudential addressed Ms. Smith's ankle injury in its initial denial and all subsequent appeals leading to this lawsuit. (*Id.* at 596-97, 583-84, 572-73). Accordingly, this Court will review Prudential's decision that Ms. Smith's leg and ankle injuries do not preclude her from performing her job.

Substantial record evidence supports Prudential's determination that Ms. Smith's injuries are not disabling.[1] In fact, Prudential's letters to Ms. Smith catalogue and explain most of this supporting evidence. In its first letter denying further benefits, Prudential referenced the nerve releases from August 2009 and explained that Dr. Swier's office had said that the procedure had been performed without complication. (*Id*. at 596). A letter written by Dr. Swier to Dr. Burnquist confirms the procedure's success and Ms. Smith's pain relief. (*Id*. at 303). On appeal, Prudential had records from Dr. Orsini which stated that Ms. Smith had the capacity to work full time. (*Id*. at 283). In a letter to Ms. Smith's attorney during the second level of appeal, Prudential also cited Dr. Scott's conclusion, reached when he treated Ms. Smith in November 2007, that Ms. Smith could work full time. (*Id*. at 572, 131). Finally, Prudential relied upon the opinion of Dr. Brenman, who reviewed all Ms. Smith's medical records and determined that Ms. Smith could work full-time with short, periodic breaks. (*Id*. at 264). Thus, substantial record evidence exists to support Prudential's determination. *See Courson*, 214 F.3d at 142.

Ms. Smith focuses her arguments on Prudential's structural conflict of interest, asserting that circumstances suggest that the conflict affected Prudential's denial of her benefits. (D.I.40 at 15-24). As evidence of this effect, she claims that Prudential: ignored the findings of her treating physicians; failed to perform an independent medical examination; required her to seek social security benefits and then ignored the social security award decision; and failed to adequately ask for any additional material that would perfect her claim. (*Id*.). Defendants claim that procedural safeguards put in place by Prudential relegate any potential conflict "to the vanishing point." (D.I.32 at 13 (citing *Glenn*, 554 U.S. at 117). They note that Prudential: uses different review units to decide initial claims and subsequent appeals; provides a voluntary second level of appeal; uses outside vendors to hire its

---

[1]Plaintiff's opposition to Defendants' motion is primarily based on the structural conflict of interest rather than a lack of substantial evidence per se.

record-reviewing physicians; and "wall[s] off" claim administration employees from employees who make financial decisions for the company. (*Id.* at 13-14).

Prudential has the type of inherent conflict of interest identified by the Supreme Court. *See Glenn*, 544 U.S. at 115. That is, Prudential decides whether a plan participant is disabled, and, if the participant is disabled, pays benefits to the participant. (D.I.40-2). It is thus to Prudential's advantage to find employees not disabled. However, this Court does not see evidence that Prudential's conflict tainted its decision regarding Ms. Smith's claim.

First, Plaintiff offers no evidence that Prudential ignored the findings of Ms. Smith's treating physicians. In fact, letters from Prudential to Ms. Smith and Dr. Brenman's report refer to the findings of Ms. Smith's treating physicians. (D.I.34 at 572-73, 82-84).

Second, neither ERISA nor the Plan required Prudential to perform an independent examination of Ms. Smith. The Plan states: "[Prudential] may require you to be examined by doctors, other medical practitioners or vocational experts of our choice. . . . [Prudential] can require examinations as often as it is reasonable to do so." (D.I.33-2 at 28). This language allows Prudential to require independent examination, but does not require it to do so. In this case, Prudential relied upon the reports of Ms. Smith's treating physicians as well as its own record-reviewing physician. This Court will not read the effect of a conflict of interest into that course of action in this case.

Third, Ms. Smith produces no evidence that Prudential ignored Ms. Smith's social security award in its decision. In fact, the record shows that Prudential acknowledged Ms. Smith's social security award. (D.I.34 at 79, 572). As Prudential notes, the standards for determining disability under social security law and under the Plan are not the same. Thus, Prudential could reach a different conclusion than did the Social Security Administration, and both conclusions could be based on substantial evidence.

7

Fourth, Ms. Smith's argument that Prudential violated 29 C.F.R. § 2560.503-1(g) by failing to describe any additional material necessary for Ms. Smith to perfect her claim is without merit. In its initial denial, Prudential listed the documentation that Ms. Smith should include for an appeal. (D.I.34 at 597). Specifically, Prudential asked for medical evidence such as therapy treatment notes, treatment notes from physicians, and test results. (*Id.*). Therefore, although Prudential's inherent conflict of interest is a factor in its decision, this Court declines to give that factor great weight. *See Glenn*, 554 U.S. at 117.

There is a substantial quantity of medical evidence that Ms. Smith is not physically disabled within the meaning of the Plan. Although Prudential operates under a structural conflict of interest, it took steps to minimize that conflict. Taking into account the structural conflict, which cannot be completely minimized, Prudential was not arbitrary and capricious in its denial of LTD benefits to Ms. Smith.

An appropriate order will issue.